Jonathan Evans (Cal. Bar No. 247376)
CENTER FOR BIOLOGICAL DIVERSITY
1212 Broadway, Suite 800
Oakland, CA 94612
Phone: 510-844-7118
Fax: 510-844-7150
email: jevans@biologicaldiversity.org

*Counsel for Plaintiffs Center for Biological Diversity and Center for Environmental Health*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY and CENTER FOR ENVIRONMENTAL HEALTH,<br><br>Plaintiffs,<br><br>vs.<br><br>MICHAEL S. REGAN, in his official capacity as Administrator of the United States Environmental Protection Agency,<br><br>Defendant. | Case No. _____<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br>(Clean Air Act, 42 U.S.C. §§ 7401 *et. seq.*) |

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

## I. INTRODUCTION

1. All areas of the country are legally entitled to healthy, clean air. Not all areas have it. This is a Clean Air Act "deadline" suit against Michael S. Regan, Administrator of the United States Environmental Protection Agency (EPA), for his failure to protect people, ecosystems, and wildlife from ozone air pollution generated by the oil and natural gas industry.

2. Ozone – or smog – is formed when volatile organic compounds and nitrogen oxides react in the presence of sunlight. Oil and natural gas development is a significant contributor to ozone problems across the country because the industry is the largest industrial source of volatile organic compounds that contribute to the formation of ground-level ozone.

3. Ozone is harmful to human health, causing decreased lung function; increased respiratory symptoms, emergency room visits, and hospital admissions for respiratory causes; and even death. Children, people with pre-existing lung and heart diseases such as asthma, older people, and those that exercise or do manual labor outside, are particularly susceptible.

4. The Clean Air Act requires EPA to establish health- and welfare-protective National Ambient Air Quality Standards (NAAQS) to limit the amount of ozone in the outdoor air. Areas with ozone pollution levels that exceed the standards must clean up their air.

5. To better protect the public from ozone, EPA promulgated a new ozone NAAQS in 2008. In response to the 2008 NAAQS, EPA designated several areas that are at issue here as nonattainment, meaning that the air quality in these areas has ozone pollution that violates the standard.

6. Once areas have been designated as nonattainment, they must submit plans, called State Implementation Plans (SIPs) to reduce ozone pollution. One element of the nonattainment SIPs for the 2008 ozone NAAQS is the 2016 Reasonably Available Control Technology (RACT)

Control Techniques Guidelines (CTG) for the Oil and Natural Gas Industry, which requires oil and natural gas production facilities to reduce their volatile organic compound emissions.

7. When a state does make a SIP submission to EPA, the Clean Air Act requires that EPA review it within specified timeframes. The states listed in Table 1 below submitted nonattainment SIP elements for the 2016 RACT CTG for the Oil and Natural Gas Industry, but EPA has not met the deadline to review the submittals and determine whether they meet the requirements of the Clean Air Act. 42 U.S.C. § 7410(k)(2)-(4).

TABLE 1[1]

| STATE | Area | COMPLETENESS DATE (no later than) | FINAL ACTION DUE DATE (no later than) |
|---|---|---|---|
| California | Los Angeles – South Coast Air Basin | 6/11/2019 | 6/11/2020 |
| California | Riverside County (Coachella Valley) | 6/11/2019 | 6/11/2020 |
| California | Sacramento Metro (Sacramento) | 6/11/2019 | 6/11/2020 |
| California | San Joaquin Valley | 6/11/2019 | 6/11/2020 |
| California | Ventura County | 6/11/2019 | 6/11/2020 |

---

[1] *See* EPA, *Required State Implementation Plan Elements Dashboard*, https://edap.epa.gov/public/extensions/S4S_Public_Dashboard_2/S4S_Public_Dashboard_2.html (last visited Apr. 6, 2021); *see also* EPA, *Nat'l Status of Ozone-8Hr (2008) SIP Requirement Element: RACT VOC CTG Oil and Natural Gas Industry (2016)*, https://www3.epa.gov/airquality/urbanair/sipstatus/reports/ozone-8hr__2008_ract_voc_ctg_oil_and_natural_gas_industry__2016__enbystate.html (last visited Apr. 6, 2021).

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF     3

| STATE | Area | COMPLETENESS DATE (no later than) | FINAL ACTION DUE DATE (no later than) |
|---|---|---|---|
| Illinois | Chicago-Naperville | 7/10/2019 | 7/10/2020 |

Accordingly, Plaintiffs the Center for Biological Diversity and the Center for Environmental Health bring this action against Defendant Michael S. Regan, in his official capacity as EPA Administrator, to compel him to perform these mandatory duties.

## II.  JURISDICTION

8.     This case is a Clean Air Act citizen suit.  Therefore, the Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 42 U.S.C. § 7604(a).

9.     An actual controversy exists between the parties.  This case does not concern federal taxes, is not a proceeding under 11 U.S.C. §§ 505 or 1146, and does not involve the Tariff Act of 1930.  Thus, this Court has authority to order the declaratory relief requested under 28 U.S.C. § 2201.  If the Court orders declaratory relief, 28 U.S.C. § 2202 authorizes this Court to issue injunctive relief.

## III.  NOTICE

10.    Plaintiffs mailed to EPA by certified mail, written notice of intent to sue regarding the violations alleged in this Complaint.  The notice letter was postmarked January 15, 2021.  EPA received it no later than January 25, 2021.  More than sixty days have passed since EPA received the notice letter.  EPA has not remedied the violations alleged in this Complaint.  Therefore, a present and actual controversy exists.

## IV. VENUE

11. Venue is proper in this Court under 28 U.S.C. § 1391(e) for several reasons. First, Defendant EPA resides and performs its official duties in this judicial district. Second, Plaintiff Center for Environmental Health resides in this judicial district. Third, a substantial part of the events or omissions giving rise to the claims in this case occurred in the Northern District of California. Several of the claims concern EPA's failure to perform mandatory duties related to California. EPA Region 9, which is responsible for California, is headquartered in San Francisco. Thus, a substantial part of the events and omissions at issue in this action occurred at EPA's Region 9 headquarters in San Francisco.

12. Pursuant to Civil L.R. 3-2(c), (d), this case is properly assigned to the San Francisco or Oakland Division of this Court because a substantial part of the events and omissions giving rise to the claims in this case occurred in the County of San Francisco.

## V. PARTIES

13. Plaintiff the CENTER FOR BIOLOGICAL DIVERSITY is a non-profit 501(c)(3) corporation incorporated and existing under the laws of the state of California, with its main California office in Oakland. The Center for Biological Diversity has approximately 84,000 members throughout the United States and the world. The Center for Biological Diversity's mission is to ensure the preservation, protection, and restoration of biodiversity, native species, ecosystems, public lands and waters, and public health through science, policy, and environmental law. Based on the understanding that the health and vigor of human societies and the integrity and wildness of the natural environment are closely linked, the Center for Biological Diversity is working to secure a future for animals and plants hovering on the brink of extinction, for the ecosystems they need to survive, and for a healthy, livable future for all of us.

14. The Center for Biological Diversity's members enjoy, on an ongoing basis, the biological, scientific, research, educational, conservation, recreational, and aesthetic values of the regions at issue in this action.

15. Plaintiff the CENTER FOR ENVIRONMENTAL HEALTH is a nonprofit corporation organized and existing under the laws of the state of California, with its headquarters located in Oakland. The Center for Environmental Health protects the public from toxic chemicals by working with communities, consumers, workers, government, and the private sector to demand and support business practices that are safe for public health and the environment. The Center for Environmental Health works in pursuit of a world in which all people live, work, learn, and play in healthy environments.

16. Plaintiffs' members live, work, recreate, travel, and engage in other activities throughout the areas at issue in this complaint and will continue to do so on a regular basis. Ozone and volatile organic compound pollution in the affected areas threatens and damages, and will continue to threaten and damage, the health and welfare of Plaintiffs' members, as well as their ability to engage in and enjoy their other activities. Ozone and volatile organic compound pollution diminishes Plaintiffs' members' ability to enjoy the aesthetic qualities and recreational opportunities of the affected areas.

17. The acts and omissions of EPA alleged here harm Plaintiffs' members by prolonging poor air quality conditions that adversely affect or threaten their health, and by nullifying or delaying measures and procedures mandated by the Act to protect their health from ozone and volatile organic compound pollution in places where they live, work, travel, and recreate.

18. The acts and omissions of EPA alleged here further harm Plaintiffs' members' welfare interest in using and enjoying the natural environment. Acute and chronic exposures to ozone

lead to foliar injury, decreased photosynthesis, and decreased growth of vegetation, thus harming Plaintiffs' members' recreational and aesthetic interests.

19.   EPA's failure to timely perform the mandatory duties described herein also adversely affects Plaintiffs, as well as their members, by depriving them of procedural protection and opportunities, as well as information that they are entitled to under the Clean Air Act and which they would use in their work.  The failure of EPA to perform the mandatory duties creates uncertainty for Plaintiffs' members as to whether they are exposed to excess air pollution.

20.   The above injuries will continue until the Court grants the relief requested herein.  A court order requiring EPA to promptly undertake its mandatory duties would redress Plaintiffs' and Plaintiffs' members' injuries.

21.   Defendant MICHAEL S. REGAN is the Administrator of the EPA.  In that role Administrator Regan has been charged by Congress with the duty to administer the Clean Air Act, including the mandatory duties at issue in this case.  Administrator Regan is also charged with overseeing all EPA regional offices including EPA Region 9, which has responsibility for California and is headquartered in San Francisco.

### VI. FACTUAL BACKGROUND: OZONE

22.   This case involves EPA's failure to timely implement the national ambient air quality standards for ozone.  While ozone is critical for the protection of the Earth when it is in the stratosphere, at ground level, ozone, the chief component of smog, is a dangerous air pollutant that causes a variety of adverse impacts.  EPA, *Ground-Level Ozone Basics*, https://www.epa.gov/ground-level-ozone-pollution/ground-level-ozone-basics#wwh (last visited Apr. 6, 2021).  Ozone is not normally directly emitted. *Id.*  Rather, it is formed in the ambient

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF                                              7

1 | air from a reaction between volatile organic compounds and nitrogen oxides in the presence of
2 | sunlight. *Id.*

3 | 23.     According to EPA, based on exhaustive scientific review, ozone pollution causes decreased lung function; increased respiratory symptoms, emergency department visits, and hospital admissions for respiratory causes; and even death. *NAAQS for Ozone*, 73 Fed. Reg. 16,436, 16,436 (Mar. 27, 2008).

24.     Those most at risk from ozone pollution are children; active people, *e.g.*, runners and people who do manual labor outside; people with pre-existing lung and heart diseases such as asthma; and older people. *Id.* at 16,440.

25.     Ozone also damages vegetation, both native and commercial crops. *Id.* at 16,485-486. Damage to native vegetation results in ecosystem damage, including diminished ecosystem services, that is, the life sustaining services that ecosystems provide to people for free, such as clean air, clean water, and carbon sequestration. *Id.*

26.     Oil and natural gas development contributes to persistent ozone problems across the country. As the United States has increased its production of oil and natural gas, emissions of volatile organic compounds have also increased. According to EPA, the oil and natural gas industry is now the largest industrial source of emissions of volatile organic compounds, which contribute to the formation of ground-level ozone. EPA, *Controlling Air Pollution from the Oil and Natural Gas Industry: Basic Information about Oil and Natural Gas Air Pollution Standards*, https://www.epa.gov/controlling-air-pollution-oil-and-natural-gas-industry/basic-information-about-oil-and-natural-gas (last accessed Apr. 6, 2021).

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF                                                  8

## VII. STATUTORY AND REGULATORY BACKGROUND

27.     Congress enacted the Clean Air Act "to protect and enhance the quality of the Nation's air resources so as to promote the public health and welfare and the productive capacity of its population." 42 U.S.C. § 7401(b)(1).  In so enacting, Congress wanted to "**speed up**, expand, and intensify the war against air pollution in the United States with a view to assure that the air we breathe throughout the Nation is wholesome once again." H.R. Rep. No. 1146, 91st Cong., 2d Sess. 1,1, 1970 U.S. Code Cong. & Admin. News 5356, 5356 (emphasis added).

28.     Central to the Act is the requirement that EPA establish national ambient air quality standards (NAAQS) for certain widespread air pollutants that endanger public health and welfare, referred to as "criteria pollutants." 42 U.S.C. §§ 7408-09.  One criteria pollutant is ozone.  *See* 40 C.F.R. §§ 50.9, 50.10, 50.15, 50.19.

29.     The NAAQS establish allowable concentrations of criteria pollutants in ambient air, *i.e.*, outdoor door.  Primary standards must be stringent enough to protect public health. 42 U.S.C. § 7409(b)(1).  Secondary standards must be stringent enough to protect public welfare, including, but not limited to, effects on soils, water, vegetation, manmade materials, wildlife, visibility (*i.e.*, haze), climate, damage to property, economic impacts, and effects on personal comfort and well-being.  *Id.* §§ 7409(b)(2), 7602(h).

30.     After EPA sets or revises a standard, the Clean Air Act requires EPA to take steps to implement the standard.  Within two years of revising a standard, EPA must "designate" areas as not meeting the standard, known as "nonattainment," or as meeting the standard, known as "attainment."  *Id.* § 7407(d)(1)(A)-(B).

31. Under the Clean Air Act, each state is required to submit state implementation plans to ensure that each NAAQS will be achieved, maintained, and enforced. Without such plans, the public is not afforded full protection against the harmful impacts of air pollution.

32. For each area designated as "nonattainment," states must develop a plan to attain the NAAQS. These plans, which must be submitted to EPA, are called State Implementation Plans (SIPs). *See id.* §§ 7410(a)(2)(I), 7501 – 7509a, 7511 – 7511f.

33. If and when a state does submit a SIP to EPA, EPA has six months to determine whether the submittal is administratively complete. *Id.* § 7410(k)(1)(B). If EPA does not make such a finding, the SIP submittal is "deemed by operation of law" to meet the minimum requirements of the Clean Air Act. *Id.* EPA then has one year from either an affirmative determination or a determination deemed by operation of law to approve or disapprove the SIP submittal in full in or in part. *Id.* § 7410(k)(2)-(4).

**VIII. FACTUAL BACKGROUND: FAILURE TO APPROVE OR DISAPPROVE SIP**

34. In 2008, EPA strengthened the primary and secondary ozone NAAQS from 0.08 to 0.075 parts per million (ppm). *NAAQS for Ozone*, 73 Fed. Reg. at 16,436.

35. EPA made attainment and nonattainment designations for the 2008 ozone NAAQS effective July 20, 2012. *See Air Quality Designations for the 2008 Ozone NAAQS*, 77 Fed. Reg. 30,088 (May 21, 2012); *see also Air Quality Designations for the 2008 Ozone NAAQS for Several Counties in Illinois, Indiana, and Wisconsin; Corrections to Inadvertent Errors in Prior Designations*, 77 Fed. Reg. 34,221 (June 11, 2012).

36. EPA designated all of the areas listed in Table 1 as nonattainment. *Id.*

37. One element of the nonattainment state implementation plans for the 2008 ozone NAAQS is the RACT CTG for the Oil and Natural Gas Industry (2016) (EPA-453/B-16-11),

which was due to EPA by no later than October 27, 2018. *See Release of Final CTG for the Oil and Natural Gas Industry*, 81 Fed. Reg. 74,798, 74,799 (Oct. 27, 2016); *see also* EPA, *Required State Implementation Plan Elements Dashboard*, https://edap.epa.gov/public/extensions/S4S_Public_Dashboard_2/S4S_Public_Dashboard_2.html (last visited Apr. 6, 2021). The RACT CTG for the Oil and Natural Gas Industry requires oil and natural gas production facilities, like well pads, to reduce their emissions of volatile organic compounds in areas that have an ozone pollution problem.

38. Table 1 lists the areas that have submitted Oil and Natural Gas Industry RACT CTG SIP submittals for the 2008 ozone NAAQS. It has been more than 12 months since these submittals were found administratively complete by EPA or deemed administratively complete by operation of law. Yet, EPA has not taken final action approving or disapproving, in full or part, these submittals. Therefore, EPA is in violation of its mandatory duty to take final action to approve or disapprove, in full or part, the submittals listed in Table 1.

## IX.   CLAIMS FOR RELIEF

### CLAIM ONE

**(Failure to Take Final Action on State Implementation Plan Submissions.)**

39. Plaintiffs incorporate by reference all paragraphs listed above.

40. The states listed in Table 1 submitted nonattainment SIP elements for the 2016 RACT CTG for the Oil and Natural Gas Industry for the nonattainment areas listed in Table 1 above.

41. Each area's nonattainment SIP element submittals for the 2016 RACT CTG for the Oil and Natural Gas Industry was deemed administratively complete, either by EPA or by operation of law, by no later than the dates listed in Table 1.

42. It is more than one year since the nonattainment SIP elements for the 2016 RACT CTG for the Oil and Natural Gas Industry were deemed administratively complete for each area listed in Table 1.

43. For each area listed in Table 1, EPA had a mandatory duty to approve or disapprove the nonattainment SIP elements for the 2016 RACT CTG for the Oil and Natural Gas Industry.

44. EPA has not approved or disapproved, either in full or in part, the nonattainment SIP elements for the 2016 RACT CTG for the Oil and Natural Gas Industry for each area listed in Table 1.

45. Therefore, pursuant to 42 U.S.C. § 7410(k)(2)-(4), EPA is in in violation of its mandatory duty to approve or disapprove the nonattainment SIP elements for the 2016 RACT CTG for the Oil and Natural Gas Industry for each area listed in Table 1.

**RELIEF REQUESTED**

Plaintiffs respectfully request that the Court:

A. Declare that the Administrator is in violation of the Clean Air Act with regard to his failure to perform each mandatory duty listed above;

B. Issue a mandatory injunction requiring the Administrator to perform his mandatory duties by certain dates;

C. Retain jurisdiction of this matter for purposes of enforcing and effectuating the Court's order;

D. Grant Plaintiffs their reasonable costs of litigation, including attorneys' and experts' fees; and

E. Grant such further relief as the Court deems just and proper.

1

2

3

4

5

6

7

8 Dated: April 7, 2021

                Respectfully submitted,

                /s/ Jonathan Evans
                Jonathan Evans (Cal. Bar No. 247376)
                CENTER FOR BIOLOGICAL DIVERSITY
                1212 Broadway, Suite 800
                Oakland, CA 94612
                Phone: 510-844-7118
                Fax: 510-844-7150
                email: jevans@biologicaldiversity.org

                Counsel for Plaintiffs

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

28

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF     13